STATE EX REL. BARRON ET AL., RELATORS, *v.* DISTRICT
COURT OF THE THIRTEENTH JUDICIAL DISTRICT IN
AND FOR STILLWATER COUNTY ET AL., RESPONDENTS.

No. 8699

Submitted September 27, 1946. Decided November 27, 1946.

174 Pac. (2d) 809

Mr. E. E. Collins and Mr. Melvin N. Hoiness, both of Billings, for relators.

Mr. E. A. Blenkner and Mr. M. L. Parcells, both of Columbus, for respondents.

MR. JUSTICE CHEADLE delivered the opinion of the Court.

Petition for writ of supervisory control.

The relators, Dennis Barron and Irma Barron, are the defendants in a certain action brought by Edmond F. Hart in the respondent court for the purpose of quieting title to certain land in Stillwater county. The complaint in said action is the short form statutory complaint brought under the provisions of section 9479, Revised Codes. No other relief is sought by the plaintiff by the complaint other than to quiet title to the lands involved. The answer of the defendants denies the allegations of the complaint as to plaintiff's title and admits that defendants have an estate in the lands described, and alleges that they are the owners and in possession thereof. The answer contains a cross-complaint consisting of two causes of action, the first, an action to quiet title in the defendants or cross-complainants, under the provisions of section 9479, Revised Codes of 1935. The second cause of action set forth in the cross-complaint is to remove a cloud from defendants' title to the property described in the complaint, brought under the provisions of section 8733, Revised Codes of 1935. No other relief is sought by defendants aside from quieting their title and removing the alleged cloud thereupon. The second cause of action in defendants' answer alleges that since Otcober 3, 1945, the defendants have been and now are the owners in fee simple of the property described in the complaint, by virtue of a deed from Esther Winters and husband, dated on that date; that defendants and their grantors have been for more than ten years, seised of and in possession of said property.

It is further alleged that the plaintiff has created a cloud upon defendants' title by wrongfully and maliciously filing a deed to said property, purporting to convey said property to plaintiff Edmond F. Hart; on information and belief that in August, 1942, the plaintiff induced Esther Winters, the owner of the property, to execute a warranty deed naming him as grantee and induced the said Esther Winters to send the deed · to the Yellowstone Bank at Columbus, Montana, upon the promise of the plaintiff that he would pay her the sum of $100 in cash at the time of making the agreement and the further sum of $5,700 upon completion of a loan on said premises and other lands, and that he would pay taxes for the year 1942 and would close the deal and take possession of said property on or before March 1, 1943; that relying upon said promises, the said Esther Winters deposited the warranty deed with the said bank. It is further alleged that said Hart failed and neglected to perform the said agreement in that he failed to pay the $100 or the 1942 taxes and that he failed to take possession of ·the premises or to pay the balance of the agreed consideration; that on or about October 5, 1945, the said Hart was informed that Esther Winters had sold the property to the defendants; that thereupon and for the purpose of creating a cloud on defendants' title, the said Hart, without the permission or consent of Winters, wrongfully obtained possession of the warranty deed from the said bank, and caused the same to be placed of record in the office of the county clerk of Stillwater county on October 6, 1945 at 6:23 a. m. of that day.

It is further alleged that no consideration was ever paid to Esther Winters by Hart for the execution or delivery of said deed and that the same was never delivered to him by Winters or by anyone acting for her or with her consent, and that obtaining and recording of said deed was wrongful and in violation of the rights of Esther Winters and of the defendants.

Therafter plaintiff filed a reply to the answer, which con-

tained a general denial and answer to the first and second causes of action set forth in defendants' cross-complaint. The reply also contains a pleading designated "cross-complaint." This alleges that about February 20, 1940, Margaret Esther Winters leased to the defendant Dennis Barron the property involved, for the term beginning March 1, 1940, and ending February 28, 1941, at the agreed rental of one-third of all grain and seed crops produced on said premises, delivered to the elevator at Columbus, Montana, together with one-half of all hay produced thereon; that the defendants entered into possession of the premises pursuant to such lease on March 1, 1940, and have continued since to occupy the same as tenants under the terms of said lease and renewals thereof and not otherwise. The cross-complaint further alleges that on or about September 2, 1942, the said Winters sold and transferred to the plaintiff all of her right, title and interest in and to the landlord's share of the crops to be produced on said premises, and on the same day executed, acknowledged and delivered to plaintiff a deed of conveyance to the real estate involved; that thereafter and prior to the harvesting of the crops from said premises for the year 1942, the plaintiff duly notified defendants of said assignment and conveyance and demanded of the defendants that they deliver the landlord's share of the 1942 crop to plaintiff, which defendants failed, neglected and refused to do, but converted the same to their own use and benefit, and that defendants also converted such proceeds to their own use and benefit for the years 1943, 1944, and 1945; on information and belief that the value of said crops for the four years was $6,000; that plaintiff has been put to expense of $250 in pursuing said property and attempting to recover the same. Judgment against the defendants for $6,250 is demanded.

Various motions to strike portions of plaintiff's reply, including that portion therein designated as "cross-complaint," were made by defendants, and it is to the trial court's order denying said motion in so far as the cross-complaint is con-

348

cerned, that relators complain and for the vacation of which this writ is sought.

The grounds urged by relators summarized are: (1) That there is no statutory or other authority permitting plaintiff to include a cross-complaint in his reply or to add a new cause of action to his original complaint without first having obtained leave of court to amend the complaint; (2) that plaintiff's alleged cross-complaint is an attempt to invoke the equity power of the court to obtain relief upon a cause of action at law and one in which there is a plain, speedy and adequate remedy afforded at law; (3) that the original cause of action is one in equity for the sole purpose of quieting title; that issue is joined by defendants' answer so that the entire cause of action is one in equity for the sole purpose of quieting title; that plaintiff's cross-complaint constitutes a new cause of action at law seeking a judgment for money damages; (4) that plaintiff's alleged cross-complaint undertakes to add a new cause of action founded in tort and involving a contract to which the defendants are not parties, and another contract to which the plaintiff is not a party, all of which constitutes an attempt after answer and reply to join an action at law with an action in equity; (5) that the allegations of plaintiff's cross-complaint constitute no defense to either of defendants' causes of action set forth in defendants' answer, nor do such allegations meet any substance of defendants' answer; (6) that the allegations of plaintiff's cross-complaint, if established, would not entitle plaintiff to recover on the original complaint; (7) that plaintiff's cross-complaint is a departure; (8) that plaintiff's cross-complaint is a sham and irrelevant pleading for the reason that its allegations and those of the complaint are contradictory and false in comparison with each other and constitute no defense, nor do they meet the substance of defendants' answer.

The sole question presented is whether the trial court was in error in denying that part of relators' motion to vacate,

affecting the plaintiff's so-called cross-complaint contained in his reply.

Relators base their right to the writ prayed for on the grounds that there is no direct appeal; that in any event, appeal would be inadequate; that it is important to have the course of the trial determined and directed; that defendants are entitled to know where the questions in litigation may end; and that there is no other way to determine the question of plaintiff's right to file a cross-complaint to a cross-complaint; or to determine where pleading may end.

Section 9127, Revised Codes, as amended by Chapter 8, Laws of 1937, prescribes authorized pleadings. That section provides:

"The only pleadings allowed on the part of the plaintiff are:

"1. The complaint;

"2. The demurrer to the answer;

"3. The reply to defendant's answer;

"4. Any motion.

"And on the part of the defendant:

"1. The demurrer to the complaint;

"2. The answer;

"3. The demurrer to reply;

"4. Any motion."

Section 9137, Revised Codes of 1935, provides that the answer of the defendant must contain, in addition to denials and admission of allegations of the complaint, "A statement of any new matter constituting a defense or counterclaim."

Section 9151, Revised Codes, provides: "Whenever any defendant to an action desires any relief against any party relating to or dependent upon * * * the subject-matter upon which the action is brought, or affecting the property to which the action relates, * * * any defendant may, in addition to and in his answer, filed at the same time, or subsequently by permission of court, a cross-complaint against all parties to such action, * * *."

Section 9158, Revised Codes, prescribing the contents of a reply, provides: "Where the answer contains a counterclaim, or any new matter, the plaintiff, if he does not demur, shall, within twenty days after service and filing of the answer, reply to such counterclaim or new matter, denying, generally or specifically, each allegation controverted by him, or of any knowledge or information thereof sufficient to form a belief, and he may allege, in ordinary or concise language, and without repetition, any new matter, not inconsistent with the complaint, constituting a defense to such counter-claim or new matter in the answer."

We do not feel called upon to interpret section 9151, supra, ■ in determing the matter before us, except to hold that obviously its provisions can be availed of only by a defendant to an action and are for his benefit alone.

The only question is, then, whether plaintiff's so-called cross-complaint is properly included as a part of his reply to defendants' answer; whether it sets out "new matter, not inconsistent with the complaint, constituting a defense to such counterclaim or new matter in the answer."

Bancroft's Code Pleading, Vol. 1, p. 668, thus states the ■ function of a reply: "The office of a reply is to meet the allegations of new matter in the answer—that is, to join issue upon the counterclaim or the new matter of defense alleged in the answer or to avoid it, as the case may be. * * * A reply may in a particular instance aid the answer, but it cannot, it has been held, aid the complaint, by supplying an omission therein or broadening its scope, by adding to it a new ground of relief." This rule, by almost identical language, has been applied by this court. Buhler v. Loftus, 53 Mont. 546, 165 Pac. 601. In Waite v. C. E. Shoemaker & Co., 50 Mont. 264, 146 Pac. 736, 738, this court said: "The reply, being merely responsive to matters alleged affirmatively in the answer, cannot perform the office of amending the complaint, nor itself become the basis of recovery." And see Doornbos v. Thomas, 50 Mont. 370, 147 Pac. 277; Thornton v. Kaufman,

35 Mont. 181, 88 Pac. 796; Manuel v. Turner, 36 Mont. 512, 93 Pac. 808. And in McCarthy v. Employers' Fire Ins. Co., 97 Mont. 540, 37 Pac. (2d) 579, 583, 97 A. L. R. 292, it is said: "The function of a reply is to join issue on a counter-claim or new matter by way of defense appearing in the answer, and therein the plaintiff may set up 'any new matter, not inconsistent with the complaint, constituting a defense to such counterclaim or new matter in the answer' (section 9158, Rev. Codes 1921), or to avoid the effect of new matter alleged as a defense (Buhler v. Loftus, 53 Mont. 546, 165 Pac. 601). Thus it is clear that the reply cannot aid the complaint by supplying omissions therein or broadening its scope by adding new grounds of relief, or permit the plaintiff to take a position inconsistent with that taken in the complaint. Flannery v. Campbell, 30 Mont. 172, 75 Pac. 1109; Doornbos v. Thomas, 50 Mont. 370, 147 Pac. 277; Buhler v. Loftus, above. Any such allegations in the reply constitute a departure from the case made in the complaint." And see Armstrong v. Butte, A. & P. Ry. Co., 110 Mont. 133, 99 Pac. (2d) 223.

It seems clear that the plaintiff's so-called cross-complaint, ▇ included in his reply, is not a pleading permitted by statute, and is unwarranted under the provisions of section 9158. Its allegations do not constitute a defense to the new matter found in defendants' answer, and are not responsive thereto, but attempt to broaden the scope of the complaint by adding a new ground for relief. It seeks to become the basis of an entirely new claim for recovery. Such attempted pleading is bad and should have been stricken upon timely motion as was made in the trial court.

It may be that the attempted cause of action might properly have been included in the original complaint, or its inclusion therein effected by amendment. But it may not be properly included in the reply. If it were otherwise, it is difficult to perceive an end of the process of joining the issues in any cause.

We recognize the general rule that a court having acquired

jurisdiction in an equity case retains it for all purposes. It is also true that under the code system of pleading, common-law distinctions of form of actions have been abolished. Section 9008, Revised Codes, provides: ''There is in this state but one form of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs.'' But as was said by this court in Kramlich v. Tullock, 84 Mont. 601, 277 Pac. 411, 413: ''It must not be forgotten that, while under the code system of pleading the common-law distinctions of form of actions have been ·abolished, the substantial rights remain unchanged. 3 Cal. Jur. 375. The reasons underlying the causes of action remain the same and plaintiff may not recover beyond the case stated by him in his complaint. (Citing cases.)'' See also State ex rel. Lewis and Clark County v. District Court of First Judicial Dist. in and for Lewis and Clark County, 90 Mont. 213, 300 Pac. 544.

The next question which arises is whether the situation presented is one in which the extraordinary power of supervisory control is warranted. Under the provisions of Article VIII, section 2, of the Montana Constitution, and section 8882, Revised Codes of 1935, this court has supervisory power to control the course of litigation in the trial courts in proper cases, including cases where relief by appeal would be inadequate. As was said in State ex rel. Whiteside v. First Judicial District Court, 24 Mont. 539, 63 Pac. 395, 400: ''As the appellate jurisdiction was granted for the purpose of revision and correction, and the original jurisdiction under these writs was granted to enable us to render such relief as is appropriate under them, so the supervisory power was granted to meet emergencies to which those other powers and instrumentalities are not commensurate. It is independent of both, and was designed to infringe upon the functions of neither. It has its own appropriate functions, and without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the

course of litigation in the inferior courts where these courts are proceeding within their jurisdiction, but by a mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate.'' See also, State ex rel. Anaconda Copper Min. Co. v. Second Judicial District Court, 25 Mont. 504, 65 Pac. 1020.

This question must be resolved, we think, by a determination of whether other adequate relief is available to relators. In State ex rel. Bonners Ferry Lumber Co. v. District Court of Second Judicial Dist. in and for Silver Bow County, 69 Mont. 436, 222 Pac. 1050, this court said: ''In State ex rel. Hennessy v. District Court of Second Judicial Dist., 26 Mont. 274, 67 Pac. 625, the writ was sought to annul an order of the trial court refusing the petition of a litigant for a survey and inspection of the underground workings of a mine. In denying the application the court said: 'The question involved, if properly reserved, may be reviewed on appeal from the judgment finally rendered in the cause, and no exigency is shown requiring immediate interference by this court.'

''In State ex rel. Harris v. District Court, 27 Mont. 280, 70 Pac. 981, the writ was sought to correct the alleged error of the district court in sustaining an objection to the introduction of evidence in the case of Harris v. Root. The application was denied, and this court said: 'The writ of supervisory control cannot be successfully invoked, for it may be employed only in exigent cases to remedy manifest wrongs which cannot be otherwise righted. (Citing cases.) Should the writ issue upon the present application, it would lie to correct each and every mistake of district courts, and in great measure supplant the ordinary appeal. Such is not its office.'

''In State ex rel. Shores v. District Court of Second Judicial Dist., 27 Mont. 349, 71 Pac. 159, the supervisory power of this court was invoked to annul an order of the district court refusing a continuance in a disbarment proceeding. In denying the application we said: 'To arrest the proceeding and compel a postponement would require this court to anticipate an ad-

verse judgment by the trial court, while, if such result was to be anticipated, it will follow in any event, and a review on appeal be thus made necessary. It is true that an adverse judgment would perhaps fix the status of Mr. Shores with reference to his office in the meantime, so that he could not engage in practice; the statute apparently making no provision for a stay of the judgment. Still such, or a similar wrong, is one of the incidents of every eroneous judgment, and the possibility of its occurrence does not justify the interference by this court in the procedings prior to judgment; otherwise every manifest wrong during the course of a trial in a district court would justify such interference. For example, if a district court should refuse to sustain a demurrer to an information or an indictment which did not state an offense, or to a complaint on the ground that it did not state a cause of action, when it did not, this would be a manifest wrong, yet this situation may and does frequently arise. Interference in this case would open the door for a like interference in the cases used for illustration, with the result that this court would be constantly employed in the hearing and determination of applications like the one under consideration; thus rendering useless, in great measure, its appellate jurisdiction. This may not be done. If the judgment in the case should be adverse, an appeal from it would furnish a remedy as complete and adequate as the court can furnish in any case, and would be preventive of any wrong whatever except such as would be an incidental result of any erroneous judgment, for which, owing to the imperfection of human institutions, no remedy has as yet been devised, except to correct it by the ordinary procedure in the trial court, or upon review by the appellate court.' ''

To the same effect see State ex rel. Clark v. District Court of Second Judicial Dist., 30 Mont. 442, 76 Pac. 1005; State ex rel. Heinze v. District Court of Second Judicial Dist., 32 Mont. 579, 81 Pac. 345; State ex rel. Butte Land and Investment Co. v. District Court, 37 Mont. 226, 95 Pac. 843; State ex rel. Grogan v. District Court of Ninth Judicial Dist., 44

Mont. 72, 119 Pac. 174; State ex rel. Nipp v. District Court, 46 Mont. 425, 128 Pac. 590, Ann. Cas. 1916B, 256; State ex rel. Topley v. District Court of Fourth Judicial Dist., 54 Mont. 461, 171 Pac. 273; State ex rel. Peel v. District Court, 59 Mont. 505, 197 Pac. 741; State ex rel. Rubin v. District Court, 62 Mont. 60, 203 Pac. 860.

In McFatridge v. District Court, Seventh Judicial Dist. in and for Richland County, 113 Mont. 81, 122 Pac. (2d) 834, §36, it is said: "The supervisory control which this court has over the course of litigation in the lower tribunals is not to be lightly exercised. That perception of its function is inherent in our judicial system. The guarded use of the power has been the rule, as is seen from the decisions of this court in the many cases heretofore arising wherein the exercise of the power has been sought. State ex rel. Larsen v. District Court of Third Judicial Dist. in and for Powell County, 78 Mont. 435, 254 Pac. 414, and earlier cases therein cited."

In the recent case of State ex rel. Scoville v. District Court of Tenth Judicial Dist., Mont., 173 Pac. (2d) 119, 120, the court in denying an application for a similar writ, said: "Relatrix seeks a writ of supervisory control or other special writ requiring respondent court to vacate an order setting aside a default entered on October 13, 1944, in an action entitled Suzanne J. Scoville v. Kallie Karjala.

"Default judgments are not favored, and special proceedings to review intermediate rulings during the progress of litigation are granted only when some compelling reason therefor is shown. The said cause is an equity action of a nature ordinarily tried without undue delay or loss of time before the court sitting without a jury, and no sufficient fact or ground is shown why the action cannot be tried readily upon the merits. Such trial may result in a decree from which no appeal will be taken, thus saving further litigation. In any event if an appeal is taken from such decree, it will permit a consideration of the question now sought to be tendered, if necessary to the determination of such appeal. No ground appearing why such event

should be anticipated by now accepting jurisdiction of this special proceeding, the writ prayed for is denied.''

No compelling reason has been here shown for issuance of ▆▆ the writ applied for. It does not appear that any injustice to the relators may not be corrected by appeal from the final judgment or decree. The circumstances do not indicate an exigency or emergency beyond that which might frequently result from an erroneous ruling by a trial court in the course of litigation, which may be remedied upon appeal; neither has it been shown that a gross injustice would result from denial of the writ. Since the relators have other adequate remedy, it follows that the petition must be denied and it is so ordered.

Since, in the exercise of our discretion in the matter, we have declined to interfere with the proceedings in the trial court, it may appear that what we have said with reference to the merits of the question presented constitutes interference with the trial court's conduct of the case. Ordinarily, perhaps, in cases where extraordinary writs are denied, our decisions should be confined to the reasons for the denial. The case before us presents a question of pleading of considerable interest to the bar of this state, and may be the means of avoiding error, not only in this case, but in future litigation. For this reason we feel justified in treating the matters now presented more fully than ordinarily is deemed desirable.

Mr. Chief Justice Lindquist and Associate Justices Morris and Angstman concur.

Mr. Justice Adair (specially concurring in denying the application for the writ but otherwise dissenting).

This is not an *appeal* invoking the *appellate jurisdiction* of the supreme court.

On the contrary this is an *original proceeding* commenced in this, an appellate court, invoking its *original jurisdiction* in an attempt to have this court issue a writ of supervisory control directing the district court to set aside a certain ruling

wherein it declined to strike, as a departure in pleading, certain allegations contained in a reply filed by plaintiff in the court below.

An appeal is a matter of right while supervisory control is a writ of discretion.

The question presented by these original proceedings is identical with that presented to this court in State ex rel. Bonners Ferry Lumber Co., Ltd., v. District Court of Second Judicial Dist. in and for Silver Bow County, 69 Mont. 436, 222 Pac. 1050, viz.: "Assuming, for the purposes of the application only, that the trial court erred in its ruling upon the motion, we are confronted with the inquiry: *Should this court interfere prior to a trial of the cause upon the merits?*" (Emphasis mine.)

The answer to the inquiry is that this court should not entertain this proceeding nor here interfere.

Human institutions have yet to attain perfection and the trial judge should be afforded every reasonable opportunity to consider and reconsider his rulings while the cause is pending before him and, if he determines that there has been error, to correct his own mistakes in the intermediate rulings made by him in the progress of the litigation. Considerable latitude must be indulged for it is not at all infrequent for a busy trial judge to get off the beam temporarily, yet to thereafter, at a subsequent stage of the proceedings again take his bearings, reconsider his former action and adopt a course whereby the litigant may complete his journey in the trial in safety and without suffering prejudice. It is therefore quite important that where possible, the appellate court adopt a "hands off" policy to the end that the trial court be permitted to try the case before it without the anticipation that the appellate court will seize every opportunity presented to "supervise" the trial court's each and every move at all the intermediate stages of the proceedings.

"A ruling on demurrer or exception is not, as a rule, regarded as binding on the court in the subsequent course of the litiga-

tion, and * * * the court may at any time before final judgment reconsider its ruling and make other appropriate orders or decisions. This rule is particularly applicable where the ruling is erroneous * * *.'' 21 C. J. S., Courts, sec. 195, pp. 337, 338.

In State ex rel. Shores v. District Court of Second Judicial Dist., 27 Mont. 349, 71 Pac. 159, 161, this court said: ''If the judgment in the case should be adverse, an appeal from it would furnish a remedy as complete and adequate as the court can furnish in any case, and would be preventive of any wrong whatever except such as would be an incidental result of any erroneous judgment, for which, owing to the imperfection of human institutions, no remedy has as yet been devised, except to correct it by the ordinary procedure in the trial court, or upon review by the appelllate court.''

I agree that the petition for the writ of supervisory control should be denied. State ex rel. Bonners Ferry Lumber Co. v. District Court of Second Judicial Dist. in and for Silver Bow County, supra; State ex rel. Scoville v. District Court of Tenth. Judicial Dist., Mont., 173 Pac. (2d) 119. While the majority opinion denies relators' petition and concedes that this court should not interfere with the trial court's order and ruling, nevertheless, the majority opinion reviews the proceedings, thoroughly canvasses the pleadings, assumes complete jurisdiction, and to all intents and purposes, considers, treats and determines the cause as though it were properly before this court on appeal, asserting that the sole question presented by these proceedings is whether the trial ocurt was in error in denying relators' motion attacking plaintiff's reply. This I consider to be highly improper for, while conceding that there should be no interference, yet this court does interfere and, interfering, it condemns the trial court's ruling made while that court was attempting to settle the pleadings in the case.

I therefore concur in the denial of the writ but otherwise dissent to the majority opinion.